*E-Filed 5/17/12*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHN ANDREW MLODZIANOWSKI,

    Petitioner,

    v.

DAN HARTLY, Warden,

    Respondent.

                                    /

No. C 10-2545 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2007, a Marin County Superior Court jury found petitioner guilty of two counts of lewd and lascivious acts on a child under the age of 14 and one misdemeanor count of child molestation. Consequent to the verdicts, petitioner was sentenced to eight years in prison.

Evidence presented at trial showed that in 2004 and 2005 petitioner, a swim instructor and life guard, committed sexual offenses against two victims under the age of 14 years old,

specifically Victim 1 and Victim 4[1]. At the time of the incident, Victim 1 was 10 years old and a member of a fitness club where petitioner was a life guard, and Victim 4 was 7 years old and received swimming lessons from petitioner. Victim 1 recounted obeying petitioner's request to touch his genitals and Victim 4 testified to petitioner having exposed himself. (Ans., Ex. A at 2 & 4.) As grounds for federal habeas relief, petitioner alleges that (1) the trial court violated his due process rights by admitting inappropriate lay opinion testimony; (2) defense counsel rendered ineffective assistance; (3) judicial misconduct resulted in a denial of due process; and (4) this action was motivated by malicious prosecution.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but

---

[1] Petitioner was charged with four counts of lewd and lascivious acts on a child under the age of 14 years and one misdemeanor count of child molestation. The jury acquitted petitioner of two counts of lewd and lascivious acts on a child as to Victims 2 and 3.

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I. Admission of Expert Opinion Testimony

Petitioner claims that the trial court violated his right to due process by allowing Victim 4's grandmother, Penny M., to give "expert testimony concerning the psychology of a prepubescent child, without due notice to defense counsel." Penny M. drove Victim 4, her granddaughter, to a swim lesson on the day of her interaction with petitioner. During the drive home after the lesson, Penny noticed that the "usually very happy" girl look "worried, confused, and upset." Penny, who had a Ph.D. in nursing and had practiced as a psych-analyst for 25 years, "was sure something was bothering" her granddaughter. She parked the car and gave Victim 4 her full attention.

At trial, defense counsel asked Penny if "she was a member of a profession that required its members to report knowledge of child abuse to law enforcement." Penny affirmed that she was, but that such requirement applied to information gained through her professional experience, rather than any gained through a family member. On redirect, Penny stated her educational qualifications, and said that as part of her 25 years as a psych-analyst,

> she had an extensive background in the study of human development and was teaching a university-level course on the subject. She had training in how children develop, how children communicate with adults and other children, and how they deal with stressful situations. She testified without objection that children at the age of Victim 4 "follow rules very carefully" and become anxious when confronted by adults who do not follow the rules. Penny M. believed that Victim 4 had been "sexually molested" by the [petitioner] and

1   that this was "one of those situations" where a child is subjected to some stress
    by a rule violation by an adult."

2

3   The prosecutor asked Penny M. if she was "familiar with what type of reaction
    children have to this situation at [Victim 4's] point in development." Defense
4   counsel objected on relevance grounds. The court responded that Penny M.
    had not been called as an expert witness. The prosecutor replied that the
5   witness was able to observe the child's physical manifestations based on her
    training and experience. The court allowed the witness to answer, and
6   overruled defense counsel's objection that the testimony was going into expert
    testimony.

7   Penny M. testified that a child's response to sexual abuse will depend on their
    personality style but "usually it's in contradiction to what their usual style is,
8   and that's why parents usually know something's wrong." She stated, "[A]
    child like my granddaughter who's very outgoing normally, happy, became. . .
9   after this incident for a time withdrawn. She became difficult in school. She
    never had school problems before . . . So those were . . . her main responses,
10  and they were stress responses related to this incident."

11  The prosecutor then asked Penny M. if "these types of stressful situations affect
    a child's memory." She replied, "They can. As a way of dealing with trauma
12  children as well as adults will oftentimes develops [*sic*] amnesia around the
    event. They don't remember it or they distort the way they do remember it as a
13  way of making it easier internally for themselves. Reducing conflict."

14  (Ans., Ex. A at 4, 8–10.)

15  The state appellate court concluded that it was not reasonably likely that the jury gave

16  much weight to the portions of Penny's testimony that went beyond lay witness testimony.

17  Although the state appellate court agreed with petitioner that portions of Penny M.'s

18  testimony went beyond lay witness testimony, the court rejected petitioner's claim because

19  based on the whole record, it was not reasonably likely that the jury gave much weight to the

20  opinions in question:

21      First, the jurors learned almost nothing about Penny M.'s professional
        training and experience that might have predisposed them to defer to her
22      expertise. There was no testimony about what she did as a "psych analyst" or
        about her accomplishments or recognition in her field, no evidence that she
23      treated children in her professional practice, and no evidence of the extent of
        her experience with children who had been sexually molested.
24
        Second, the objectionable testimony Penny M. gave was brief, wholly
25      undeveloped, and added little or nothing to the prosecution's case. The
        objectionable testimony came out only after Penny M. had been examined
26      and cross-examined. It consisted of a couple of sentences spoken in 10 days
        of trial testimony. Although [petitioner] claims the prosecutor twice
27      "adverted" to Penny M.'s improper opinions in his closing argument, we find

28
                                                                                No. C 10-2545 RS (PR)
                                        4                                      ORDER DENYING PETITION

no such references. The prosecutor explained Victim 4's failure to remember that [petitioner] had touched her with "the squishy thing" as a "very sophisticated, grown-up way of thinking to put these horrible things. . . behind her . . . ." The prosecutor later mentioned that Penny M. was a psychotherapist and registered nurse, but did so only to enhance the credibility of her percipient observations regarding Victim 4's behavioral changes after the incident. Neither argument referred to or drew support from Penny M.'s improper comment about children's amnesia or her comparison of Victim 4 to other molestation victims.

The prosecutor's silence about Penny M.'s opinion is not surprising. Her opinions contributed nothing of value to the prosecution's case. The propositions that (1) a seven-year-old child would forget part of an unpleasant experience she had had three years earlier, or (2) a molestation was likely to cause behavioral changes in a child victim, are not so startling or so far outside the realm of common sense that an expert witness was required in order to establish them. . . .

(*Id.* at 10–11.)

The state appellate court also concluded that petitioner was not prejudiced:

Finally the evidence of [petitioner's] guilt was strong and compelling without regard to Penny M.'s opinion testimony. Penny M.'s testimony about what Victim 4 told her was corroborated by multiple circumstances. First, the nature and circumstances of the conversation she described were highly unusual and indicative that something very disturbing to Victim 4 had occurred. Second, Victim 4 had no evident motive to lie to her grandmother about what had happened and Penny M. had no motive to lie about what Victim 4 had told her. Third, the words Penny M. attributed to Victim 4 — that she had felt something "really squishy" under her — were clearly words that a child rather than an adult would have chosen. Fourth, there was no evidence that Penny M. ever gave an account of her conversation with her granddaughter, either contemporaneously when she reported it to [petitioner's] employer, or later when she reported it to police, in which she omitted to mention the granddaughter's statement about feeling something "squishy." Fifth, Victim 4's testimony substantially corroborated her grandmother's account concerning the fact, nature, and circumstances of the conversation. The single discrepancy that existed between the two accounts, although not insignificant, was readily explained in view of Victim 4's age when the incident occurred, and the fact that the discrepancy concerned an aspect of the event that would have been much more significant to an adult than to a child. Finally, [petitioner's] own admission that Victim 4 had seen his exposed penis on the day in question tended to corroborate Penny M.'s testimony.

(*Id.* at 11–12.)

1    Petitioner's claim lacks merit. First, the state appellate court reasonably determined
2 that petitioner was not deprived of due process. Defense counsel opened the door to this line
3 of questioning. The prosecution had fully intended to put its case on without mentioning
4 Penny M.'s profession and only elicited this opinion testimony from her on redirect
5 examination. Second, even if portions of Penny M.'s testimony went beyond observations of
6 her granddaughter and did not constitute permissible lay opinion testimony, any error in
7 allowing or failing to strike Penny M.'s testimony was harmless as the evidence against
8 petitioner was strong. Victim 4 testified forthrightly that she saw petitioner exposing his
9 penis outside of his swimsuit as he conducted her swim lesson. (Ans., Ex. F at 1371,
10 1401–02.) Penny M. heard Victim 4 report that she "felt something squishy under me" as
11 petitioner bounced her in the water during the same lesson. (*Id.* at 1284.) Although
12 petitioner testified that he did not intentionally expose his penis to Victim 4 and that he
13 covered his penis after Victim 4 had alerted him, the jury found petitioner's explanation not
14 credible. Thus, Penny M.'s challenged testimony did not create great prejudice against
15 petitioner in light of his testimony admitting an accidental exposure, and Victim 4's
16 corroborative testimony. The challenged evidence was brief and the trial court instructed the
17 jury on all relevant law. Accordingly, the claim is DENIED.

18 **II.    Assistance of Counsel**

19    Petitioner claims that defense counsel rendered ineffective assistance when he failed
20 to (A) retain a defense expert from the onset of the case, (B) make objections, stated wrong
21 grounds for objections, and to make any objection during petitioner's testimony,
22 (C) effectively cross-examine a prosecution witness, and (D) object to jury instructions
23 regarding the standard of proof. In order to prevail on a claim of ineffectiveness of counsel,
24 the petitioner must establish two factors. First, she must establish that counsel's performance
25 was deficient, i.e., that it fell below an "objective standard of reasonableness" under
26 prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–68 (1984).
27 Second, she must establish that she was prejudiced by counsel's deficient performance, i.e.,

1 that "there is a reasonable probability that, but for counsel's unprofessional errors, the result
2 of the proceeding would have been different." *Id*. at 694.  A reasonable probability is a
3 probability sufficient to undermine confidence in the outcome.  *Id*.  Where the defendant is
4 challenging her conviction, the appropriate question is "whether there is a reasonable
5 probability that, absent the errors, the factfinder would have had a reasonable doubt
6 respecting guilt." *Id.* at 695.

### A.   Expert Witness

Petitioner contends that "defense counsel should definitely confer with a qualified expert in child psychology in the planning stages of the defense so as to be competently prepared in a strategic and meaningful defense." (Pet. at 10.)  Petitioner fails to show prejudice because his claim is insufficiently detailed and speculative.  Petitioner does not specify what testimony or information a defense expert in "child psychology" would have, and how that supposed testimony would have made any difference at trial.  "Speculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  Accordingly, the claim is DENIED.

### B.   Objections

Petitioner claims that defense counsel "deliberately sabotaged petitioner's defense . . . by failing to make relevant objections, by his ineptitude in stating the wrong grounds for objections he did make, by failing to even make any objection at all while petitioner was being grilled and badgered on the stand." (Pet. at 10.)  Petitioner complains of nineteen instances "as proof of incompetency of trial counsel's objections (or failures to make any when it was warranted)." (*Id.* at 11–12.)

Petitioner's claims are without merit.  A review of the record shows that any alleged errors by defense counsel were of little import, and were ultimately harmless as the evidence against petitioner was strong.  This evidence consisted of testimony from Victim 1, Victim 4, and Penny M.  Petitioner's complaints about counsel's failure to object did not impeach the testimony of Victim 1 or Victim 4.  Thus, because petitioner has failed to show that defense

counsel's errors prejudiced the defense the claim is DENIED.

### C. Cross-Examination of Penny M.

Petitioner claims that defense counsel failed to cross-examine effectively Penny M., and damaged his case "by eliciting responses from People's star witness about 'qualifications' that he knew would tend to make her an expert." (Pet. at 10.) Petitioner's claim is insufficiently detailed. Petitioner does not state exactly how defense counsel failed to cross-examine effectively Penny M., and how these alleged deficiencies adversely affected his defense. Although, petitioner argues that defense counsel opened the door to testimony about Penny M.'s professional background, defense counsel objected to Penny M.'s opinion testimony about Victim 4's psychological response to the incident, and further moved to have that portion of the testimony stricken from the record. (Pet., Ex. A at 1329–32.) More importantly, defense counsel reasonably may have concluded that it was in petitioner's interest to present evidence of Penny M.'s status as a mandatory reporter to emphasize her failure initially to report the incident to law enforcement. Thus petitioner does not show that counsel was ineffective or that the defense was prejudiced from counsel's alleged failure to cross-examine Penny M. Accordingly, the claim is DENIED.

### D. Jury Instructions

Petitioner contends that defense counsel failed to "object to illegal instructions given to the jury which used the wrong standard for the finding of guilt." (Pet. at 10.) Petitioner refers to the standard jury instruction on other crimes evidence, CALCRIM No. 1191, which was admitted to address the jury's analysis of evidence of a prior conviction. (Pet. Ex. C at 1195–96.) The instruction limited its application to petitioner's 1998 misdemeanor conviction of the "uncharged crime of attempted unlawful sexual intercourse with a minor under the age of 18 in violation of Penal Code sections 644/261.5 that was not charged in this case." (Ans., Ex. E at 347.)

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). The disputed instruction did nothing to lower this standard of proof. The standard instruction also limits its application and instructs: "[t]he People must still prove each element of every charge beyond a reasonable doubt. Do not consider this evidence for any other purpose except for the limited purpose of determining the [petitioner's] credibility." (Ans., Ex. E, Vol. 2 at 347–48.) The jury was also instructed on the reasonable doubt burden of proof with CALCRIM No. 220 and on the elements of the underlying crimes with CALCRIM No. 1110. (*Id.* at 319, 343.) Petitioner's claim does not run afoul of *Winship*. Consequently, petitioner has not shown that counsel was ineffective or that the defense was prejudiced from counsel's alleged inaction. Accordingly, the claim is DENIED.

### III. Judicial Misconduct

Petitioner claims that judicial misconduct denied him his constitutional rights. (Pet. at 13.) Petitioner objects to the admission of (A) hearsay evidence from Victim 4's grandmother, (B) evidence of a past offense, and (C) jury instructions that were highly prejudicial. (*Id.* at 13, 15.)

#### A. Hearsay Evidence

Petitioner claims that in allowing Penny M.'s hearsay testimony regarding her conversation with Victim 4 he was denied a fair hearing because the jury was tainted "with unverifiable hearsay that had been recanted and unequivocally denied by the person who had supposedly made the statement." (Pet. at 13.) Based on the excited utterance exception to the hearsay rule, Penny M. testified about statements Victim 4 made to her in her car on July 22, 2004. (Ans., Ex. F at 1282–83.) Petitioner further argues that this hearsay testimony is unsubstantiated because there is "[n]o other corroborating evidence." (Pet. at 14.) The state appellate court rejected this claim:

> Here, the mere passage of time did not negate the spontaneity of Victim 4's statement, nor did the intervening events. As they drove away from the recreation center, Penny M. described Victim 4 as looking "worried," "confused," and "upset about something." Penny M. testified that she could tell something was really bothering her." Based on the evidence, the trial court did not abuse its discretion in admitting Victim 4's statements to her grandmother under the excited utterance exception to the hearsay rule.

(Ans., Ex. A at 18.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *Henry*, 197 F.3d at 1031. The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). But only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *Jammal*, 926 F.2d at 920.

Petitioner is not entitled to habeas relief on this claim. The jury could draw the permissible inference that Penny felt something when petitioner came into contact with her. Evidence presented at trial also showed that Penny M.'s testimony regarding Victim 4's statements was corroborated by multiple circumstances. Penny M.'s testimony of Victim 4's statements were consistent with words that a child rather than an adult would have chosen.

Indeed, Victim 4's testimony substantially corroborated her grandmother's account concerning the fact, nature, and circumstances of the conversation. The fact that Victim 4 did not testify that she had felt petitioner's penis touch her was readily explained in view of Victim 4's age when the incident occurred, and the fact that the discrepancy concerned an aspect of the event that would have been much more significant to an adult than to a child.

Finally, petitioner's own admission that Victim 4 had seen his exposed penis on the day in question tended to corroborate Penny M.'s testimony. Therefore, the admission of Penny M.'s alleged hearsay testimony was not so arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Accordingly, the claim is DENIED.

### B. Prior Offense

Evidence that petitioner committed a prior sexual offense — attempted unlawful sexual intercourse with a minor, Victim 5, in 1998 — was admitted at trial to show that he had a propensity to commit such offenses. (Pet. at 13–14.) Petitioner was convicted of misdemeanor attempted unlawful sexual intercourse with a minor in 1998. (Ans., Ex. A at 5, n.1.) Petitioner claims that the admission of such evidence violated his right to due process because it constituted impermissible character and propensity evidence. (Pet. at 13.) The state appellate court found the prior act evidence probative and rejected petitioner's claim. (Ans., Ex. A at 14.)

Petitioner's claim cannot succeed because no remediable constitutional violation occurred. The Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 67–71 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). Furthermore, courts have "routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions." *United States v. LeMay*, 260 F.3d 1018, 1025 (9th Cir. 2001). In sum, because the Supreme Court expressly has left open the question presented in the petition, petitioner's claim that the trial court's admission of propensity evidence violated his due process rights is without merit. Accordingly, the claim is DENIED.

### C. Jury Instructions Violated Due Process

Petitioner claims that the trial court denied him due process in instructing the jury with standard CALCRIM Nos. 460, 1071, 301, 1190, 362, 1191, and 333. (Pet. at 15–16.) Such instructions, petitioner contends, allowed the jury to convict him solely because of the jury's prejudice against petitioner. (*Id.*)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982).

#### i. Sexual Intercourse with a Minor

Petitioner claims that instructions regarding his prior conviction (CALCRIM Nos. 260 and 1071) were a procedural error that caused "deliberate and undue prejudice in the minds of the jury during deliberations" because petitioner was never charged with "sexual intercourse with a minor." (Pet. at 15.) Petitioner's claim lacks merit. The instructions were proper because petitioner was previously convicted of misdemeanor attempted unlawful sexual intercourse with Victim 5 in 1998. Because the parties stipulated to informing the jury that petitioner was convicted of this crime on May 8, 1998, these jury instructions were proper in advising the jury of the elements of this crime. (Ans., Ex. F at 1732.) Petitioner's claim is DENIED.

### ii. Evidence of Other Crimes

Petitioner objects to CALCRIM No. 1191 as it "presupposes" that there were charges "held uncharged due to lack of evidence" and that "the prosecution had met the burden of proof." (Pet. at 16.) This instruction states that evidence was presented showing that "the [petitioner] committed the crime of attempted unlawful sexual intercourse with a minor under the age of 18 . . . that was not charged in this case." (Ans., Ex. E, Vol. 2 at 347.) The jury was also informed, however, that it may consider this evidence only if the prosecution had proved by a preponderance of the evidence that petitioner committed the uncharged offense. If the jury does decide that the [petitioner] committed the uncharged offense, the jury may conclude from the evidence that the [petitioner] was disposed to commit sexual offenses. (*Id.*)

Petitioner has not shown that the instruction infected the trial to the extent that he was denied a fair trial under due process. First, the instructions permit, but do not require, the jury to consider evidence that petitioner committed a prior sexual offense. Because the instruction was permissive, the jury was not required to consider such evidence, much less required to make a finding of guilt based upon it. Rather, the jury was free to accept or reject such evidence, and even if it accepted such evidence as true, to give it any weight it chose. Furthermore, as stated above, courts have "routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions." *LeMay*, 260 F.3d at 1025.

Second, nothing in the instruction lowered the prosecution's burden of proof. The instructions themselves state explicitly that the prior act evidence "is not sufficient by itself to prove that [petitioner] is guilty of the charged offense." The jury was also separately instructed that it had to be convinced of petitioner's guilt beyond a reasonable doubt. The Court must presume that the jurors followed the instructions and applied the proper standard. *Richardson v. Marsh*, 481 U.S. 200, 206 1987). Petitioner's claim is DENIED.

### iii. Witness Testimony

Petitioner argues that the trial court erred in instructing the jury with CALCRIM Nos. 301 and 1190 because both instructions had a prejudicial impact against petitioner's presumption of innocence. (Pet. at 15.) Instruction 301 reads that the "testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." Instruction 1190 reads, "conviction of a sexual assault crime may be based on the testimony of a complaining witness alone." Petitioner has not shown how these instructions were prejudicial, especially considering that the "one witness" standard applies to all cases, not only to sexual crimes cases. Furthermore, the state trial court is required to give such instructions in every case, *People v. Rincon-Pineda*, 14 Cal.3d 864, 884–885 (1975), and the California Supreme Court has held that it is proper to give both instructions 301 and 1190 in cases involving sex offenses, *People v. Gammage*, 2 Cal.4th 693, 702 (1992).

Additionally, the petitioner claims that CALCRIM No. 333 showed that even the judge was confused as to whether Penny M. testified as a lay or expert witness. (Pet. at 16–17.) According to the petitioner, "the judge owed a duty to the petitioner to clarify the instructions given to the jury so as to be unambiguously clear." (*Id.*) Instruction 333 states that a witness who was not testifying as an expert gave her opinion during the trial. The jury was instructed further that "[y]ou may but are not required to accept that opinion[] as true or correct. You may give [that] opinion[] whatever weight you think appropriate." (Ans., Ex. E, Vol. 2 at 336.) The trial court did not violate petitioner's rights in giving this instruction, which properly tells the jury how to weigh lay witness testimony, and cautions that they may but are not required to accept those opinions as true or correct. The jury was <u>not</u> instructed on CALCRIM No. 332 which deals with expert witness testimony. Petitioner's claim is DENIED.

### iv.     Consciousness of Guilt:  False Statements

Petitioner claims that the giving of CALCRIM No. 362 violated his right to due process because it "deliberately plant[ed] the seed in the jury's mind that his lying about his innocence wasn't to be believed." (Pet. at 15–16.)  Instruction 362 states that "if the [petitioner] made a false or misleading statement relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt." (Ans., Ex. E, Vol. 2 at 342.)  The instruction further advises the jury that a false statement alone cannot prove guilt: "[i]f you conclude that the [petitioner] made the statement, it is up to you to decide its meaning and importance.  However, evidence that the [petitioner] made such a statement cannot prove guilt by itself." (*Id.*)

Trial testimony by Victims 1 and 4 regarding their interactions with petitioner was enough to allow a jury reasonably to conclude that petitioner fabricated a story to explain his conduct.  Petitioner has failed to show that this instruction violated some constitutional right. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  He does not show how these standard instructions misstated the law or rendered his trial fundamentally unfair.  Accordingly, the claim is DENIED.

### IV.    Malicious Prosecution

Petitioner asserts that "both the [j]udge and the [p]rosecutor knew full well that the petitioner was innocent of the prior [offense] and yet with malice aforethought, deliberately set out to ruin petitioner's life by the malicious prosecution of the accused." (Pet. at 17.)  He further contends he "pled to a crime that he did not attempt nor was he guilty of, however the prosecutor charged a special allegation of a prior conviction and the judge condoned this action as well as allowed CALCRIM Nos. 460, 1071 and 1191 in a concerted effort to gain a conviction." (*Id.*)

The prosecution's knowing use of false evidence constitutes a violation of due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a due process violation based on the government's use of false or misleading testimony, petitioner must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). In fact, a conviction based in part on perjured testimony or false evidence, even perjured testimony or false evidence was presented in good faith, does not comport with fundamental fairness. *Hayes v. Brown*, 399 F.3d 972, 980 (9th Cir. 2005). Ultimately, relief will depend on whether with the perjured testimony or false evidence petitioner received a fair trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (using test in context of suppression of evidence). A violation will be found, and relief will be granted, by showing that the perjured testimony or false evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id.* at 435.

Petitioner has failed to show that evidence of his prior conviction was false. The record shows that Victim 5 testified at trial as to the events surrounding petitioner's 1998 conviction of misdemeanor attempted unlawful sexual intercourse with a minor. By stipulation the parties informed the jury that petitioner was convicted of Penal Code Section 664, slash. 2671.5(a), misdemeanor attempted unlawful sexual intercourse with a minor, specifically Victim 5, on May 8, 1998. (*Id.* at 1732.)

On this record, petitioner does not establish that the prosecutor or the court knowingly used false evidence or that any due process violation occurred. The state court's rejection of petitioner's claim was not contrary to or an unreasonable application of Supreme Court precedent, nor was it objectively unreasonable in light of the totality of the evidence presented.

**CONCLUSION**

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: May 17, 2012

RICHARD SEEBORG
United States District Judge